Jasmina Richter/Bar No. 024180
**SANDERS & PARKS, P.C.**
3030 North Third Street, Suite 1300
Phoenix, AZ 85012-3099
Direct Phone: (602) 532-5779
jasmina.richter@sandersparks.com

*Attorneys for Plaintiff Developers Surety
and Indemnity Company*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Developers Surety and Indemnity Company, | Case No.: [Case ID] |
| Plaintiff, | |
| v. | **COMPLAINT FOR DECLARTORY JUDGMENT OF NO COVERAGE** |
| Newcor Homes, LLC; Mark Allen and Donna Fendon, husband and wife, and Lee Allen, a married man as his sole and separate property, | |
| Defendants. | |

Plaintiff Developers Surety and Indemnity Company ("DSI") by and for its Complaint, hereby alleges as follows.

### **NATURE OF THE ACTION**

1. This is a civil action for declaratory relief through which DSI seeks a declaratory judgment, under 28 U.S.C. § 2201 *et seq.*, that the commercial general liability policies issued by DSI to Defendant Newcor Homes, LLC ("Newcor") provide no coverage for the claims and damages sought in an action currently pending in the Superior Court of Arizona for Maricopa County styled *Allen v. Newcor Homes, LLC*, Case No. CV2018-008311 ("the Underlying Action") brought by Mark Allen, Donna Fendon and Lee Allen (collectively "the Allens").

2. Through this action, DSI seeks a determination from this Court that DSI has no indemnity or defense obligations towards Newcor, or any other claimed insured, or any

other person or entity, who may assert claims against such insureds or claimed insureds, for any claimed damages stemming from the Underlying Action.

**PARTIES, JURISDICTION AND VENUE**

3. Plaintiff DSI is a California corporation with its principal place of business in the State of California, and is therefore a citizen of California as defined by 28 U.S.C. § 1332 (c)(1).

4. Defendant Newcor is a limited liability company with its principal place of business in Arizona. The only member and manager of Newcor is Michael Newsome. Upon information and belief, Michael Newsome resides in Arizona and is a citizen of Arizona. Therefore, Newcor is a citizen of Arizona.

5. Upon information and belief, Defendant Mark Allen is an individual who resides in Arizona and is a citizen of Arizona.

6. Upon information and belief, Defendant Donna Fendon is an individual who resides in Arizona and is a citizen of Arizona.

7. Upon information and belief, Defendant Lee Allen is an individual who resides in Arizona and is a citizen of Arizona.

8. DSI is informed and believes that the amount in controversy in this action exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different states. Notably, the Allens have sought more than $75,000 as their claimed damages in the Underlying Action. Thus, this Court has diversity jurisdiction over this action under 28 U.S.C. § 1332.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) and (2) because the Defendants reside in this District and the events giving rise to this action occurred in this District.

10. An actual case or controversy has arisen between the parties because the Allens have filed claims in the Underlying Action for damages against Newcor. Newcor has tendered the defense and indemnity of the Underlying Action to DSI and contends that that it has insurance coverage for the Underlying Action from DSI. DSI has accepted the

1  defense of Newcor subject to a reservation of rights. As such, an actual controversy exists
2  that requires a judicial declaration to determine the respective rights and obligations of the
3  parties.

## UNDERLYING LAWSUIT

11. On June 5, 2019, the Allens filed a Second Amended Complaint, which is the operative complaint in the Underlying Action. A copy of the Allens' Second Amended Complaint ("SAC") is attached as Exhibit "1".

12. The Underlying Action alleges that Newcor negligently designed and constructed a single-family home located at 1530 E. Paradise Lane, Phoenix AZ 85222 ("Home").

13. The Home was allegedly conveyed to the Allens on May 21, 2018.

14. On August 23, 2018, during a rainstorm, the Home allegedly flooded and was damaged by surface-water runoff.

15. The Underlying Action alleges that the Home flooded due to Newcor's allegedly negligent design and construction of the Home included the following: (1) finished floor elevations are lower than the street; (2) grading is not adequately sloped away from the Home; (3) some or all of the grading is reverse slope to the Home; (4) there is no adequate drainage swale in either of the side yards; (5) there is no adequate slope from the front yard to the rear yard to move water to the rear retention area; (6) the design intent was not met in the as built construction; and (7) there are no features implemented in the front of the Home to prevent flooding from surface water.

16. The Underlying Action also alleges a number of construction defects unrelated to the storm event, including paint imperfections, kitchen faucet leaking, drywall imperfections, tile grout cracking, termites, stucco imperfections, gate not aligning, paver walkway collapsing over sewer line, etc.

17. The Underlying Action also asserts claims against the City of Phoenix based on the allegedly negligent design and construction of the wash and culvert immediately adjacent to the Home, negligent failure to maintain the wash and culvert, and negligent

approval of the building permit, grading plans, and certificate of occupancy for the Home.

18. The Underlying action alleges that the City of Phoenix was aware that the site had flooded on previous occasions and that if the culvert was designed properly it should have been able to handle the storm water.

19. The SAC set forth the following causes of action: (1) Count I Negligence (City of Phoenix); (2) Count II Negligence Per Se (City of Phoenix); (3) Count III Breach of Contract (Newcor); (4) Count IV Breach of Implied Warranty (Newcor); and (5) Count V Injunctive Relief (City of Phoenix).

20. The SAC seeks breach of contract damages, interest, attorneys' fees and costs against Newcor and sets forth that those damages will include damages to restore and repair the Home, expert investigation, relocation costs, amounts incurred to prevent further damage, and diminution in value.

## **THE DSI POLICIES**

21. DSI issued the following commercial general liability policies to the named insured Newcor: policy number BIS00021933-01, effective from April 22, 2015 to April 22, 2016 ("01 Policy"), policy number BIS00021933-02, effective from April 22, 2016 to April 22, 2017 ("02 Policy"), policy number BIS00021933-03, effective from April 22, 2017 to April 22, 2018 ("03 Policy"), and policy number BIS00021933-04, effective from April 22, 2018 to April 22, 2019 ("04 Policy")

22. The Named Insured under the 01 Policy, 02 Policy, 03 Policy, and 04 Policy (collectively "DSI Policies") is Newcor.

23. The 03 Policy provides in the insuring agreement, in relevant part, as follows:

**1.** Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies…However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily

- 4 -

injury" or "property damage" to which this
insurance does not apply…

***

(Ex. 2, 03 Policy, Section I(1)(a).)

24. The insuring agreements of the DSI Policies were amended through Endorsement ID 01 02 08 08 (Continuous or Progressive Injury and Damage Exclusion), which provides, in relevant part, as follows:

Paragraphs 1.b.(3), 1.c. and 1.d.(1), (2) and (3) of the Insuring Agreement of COVERAGE A-BODILY INJURY AND PROPERTY LIABILITY (Section I-Coverages) are replaced with the following:

c. This insurance does not apply to any damages because of, or related to "bodily injury" or "property damage" that is "continuous or progressive":

   (1) if the "bodily injury" or "property damage" first existed, or was alleged to have first existed, prior to the policy period; or

   (2) if the "bodily injury" or "property damage" was, or was alleged to be, taking place prior to the policy period, even if actual or alleged "bodily injury" or "property damage" continued during the policy period; or

   (3) if the "bodily injury" or "property damage" was caused by, or was alleged to have been caused by, conditions that existed prior to the policy period and that resulted in "bodily injury" or "property damage" taking place during the policy period.

d. All "continuous or progressive" "bodily injury" and "property damage" arising out of "your work" on a single project or development, and included in the "products-completed operations hazard", shall be deemed to have occurred at the time of the first such "bodily injury" or "property damage" and to have arisen out of the same "occurrence." A single project or development includes all phases of the project or development.

***

f. If the term of this policy is more than one annual period, the most we will pay for "continuous or progressive" "bodily injury" or "property damage" taking place over a period longer than one year is the applicable limit of insurance shown in the Declarations for the first annual policy period in which such "bodily injury" or "property damage" occurred, or was alleged to have occurred,

whichever is earlier; but we will not pay more than we are legally obligated to pay under paragraph 1.a. of COVERAGE A-BODILY INJURY AND PROPERTY DAMAGE LIABILITY.

***

The following definition is added to Section V-DEFINITIONS:

"Continuous or progressive" means "bodily injury," "property damage" or a "personal and advertising injury" that progresses or continues over time, even if latent, cumulative, changing, evolving, deteriorating, intermittent or repeated.

25. The "property damage" in this case occurred August 23, 2018 during a rainstorm when water entered the Home. The Home was conveyed to the Allens three months earlier, on May 21, 2018. Therefore, the 01 Policy (effective from April 22, 2015 to April 22, 2016), the 02 Policy (effective from April 22, 2016 to April 22, 2017), and the 03 Policy (effective from April 22, 2017 to April22, 2018), which expired before any property damage occurred are not triggered. DSI declined coverage with respect to the 01, 02, and 03 Policy.

26. DSI is providing a defense to Newcor subject to a reservation of rights under the 04 Policy. A copy of the 04 Policy is attached as Ex. 2.

27. The 04 Policy contains limits of liability of $1,000,000 each occurrence, $2,000,000 products/completed operations aggregate and $2,000,000 general aggregate. The 04 Policy also contains a $1,000 deductible for property damage per occurrence. The 04 Policy is written on Coverage Form CG 00 01 04 13.

28. The 04 Policy contains an Additional Conditions Endorsement (ID 00 06 01 14), which amends the 04 Policy and adds conditions precedent to coverage as follows:

The following conditions precedent to coverage are added to and form part of the policy:

**1.** You must be named an additional insured on the commercial general liability policy of each contractor and subcontractor that performs work on your behalf throughout the time of each such contractor's and

subcontractor's performance, and each such policy must provide defense as well as indemnity to you as an additional insured.

2. You must obtain a certificate of insurance from each contractor and subcontractor that performs work on your behalf prior to the commencement of each such contractor's and subcontractor's work indicating that each such contractor and subcontractor has a commercial general liability policy in effect.

3. Both the policy within which you are named as an additional insured and the certificate of insurance you obtain must have each occurrence, general aggregate, and products-completed operations aggregate limits, including sublimits, in an amount equal to or greater than this policy.

4. You must obtain a hold harmless agreement from each of your contractors and subcontractors, indemnifying you against all loss in any way related to the work performed on our behalf by each such contractor and subcontractor.

29. The conditions precedent to coverage set forth in the Additional Conditions Endorsement were not met by Newcor such that the duty to defend or indemnify the Underlying Action was never triggered.

30. The 04 Policy also contains the following exclusions:

**2. Exclusions**

This insurance does not apply to:

***

**a. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

***

(2) Assumed in a contract or agreement that is an "insured contract"…

\*\*\*

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

\*\*\*

31. The 04 Policy also contains endorsement (CG 22 34 04 13) which amends the 04 Policy and provides in relevant part:

**EXCLUSION – CONSTRUCTION MANAGEMENT ERRORS AND OMMISSIONS**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications b any architect, engineer or surveyor performing services on a project on which you serve as construction manager; or

2. Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved that which is described in paragraph **1.** or **2.**

This exclusion does not apply to "bodily injury" or "property damage" due to construction or demolition work done by you, your "employees" or your subcontractors.

***

32. The 04 Policy also contains the following endorsement (CG 22 79 04 13) which amend the 04 Policy and provides in relevant part:

**EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY**

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

   ***

   b. Providing, or hiring independent professionals to provide, engineering, architectural or survey services in connection with construction work you perform.

   This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.

2. Subject to Paragraph **3.** below, professional services include:

   a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

   b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

***

33. The DSI Policies also contain an allocation provision added through endorsement ID 00 03 07 07. The provision provides, in relevant part, as follows:

- 9 -

e. In any suit we defend, the insured must, at our request, instruct the insured's defense counsel to seek "allocation" for the purpose of allowing the most accurate determination between covered and uncovered damages.

34. Under the 04 Policy, Section V, Definitions provides, in relevant part:

**SECTION V—DEFINITIONS**

\*\*\*

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earlier of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

17. Property damage means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;
(b) Others trading under your name; or
(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
(2) The providing of or failure to provide warnings or instructions.

***

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and
(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
(2) The providing of or failure to provide warnings or instructions.

35. In addition to the DSI Policy terms described herein, there may also be no coverage for the Underlying Action under the DSI Policies based on other terms, conditions, endorsements, definitions, and/or exclusions, all of which DSI hereby reserves and does not waive.

- 11 -

# FIRST CAUSE OF ACTION

(Declaratory Relief – Against All Defendants)

36. DSI re-alleges and incorporates by this reference all preceding paragraphs above, in their entirety, as though fully set forth herein.

37. DSI contends that its obligations under the 04 Policy were not triggered by the Underlying Action as the pre-conditions to coverage, set forth in the Additional Conditions Endorsement, were not met by Newcor.

38. Further, the insuring agreement of the 04 Policy was amended through Endorsement ID 01 02 08 08 (Continuous or Progressive Injury and Damage Exclusion), which provides, in relevant part, that there is no coverage under the policy if the "property damage" existed before the inception of the policy and continued into the policy period or if the "property damage" was caused by conditions that existed prior to the policy period that resulted in the "property damage" during the policy period.

39. In this case, the 04 Policy incepted on April 22, 2018. The condition that caused the "property damage" is the alleged negligent design and construction including finished floor elevations that were lower than the street. That condition existed before the Policy incepted on April 22, 2018. Therefore, the continuous or progressive injury and damage exclusion bars or limits coverage.

40. DSI contends that the allegations in the Underlying Action of defective workmanship standing alone do not constitute an "occurrence" and repair of the alleged defective workmanship or product do not constitute "property damage."

41. DSI contends that the "contractual liability" exclusion, "your work" exclusion, and "your product" exclusion apply to limit or exclude coverage for some or all of the damages claimed in the Underlying Action.

42. DSI contends that the construction management errors and omissions exclusion applies to limit or exclude coverage to the extent that the "property damage" is found to "arise out of" the preparing or failure to prepare specifications by an engineer.

43. DSI contends that the contractors-professional liability exclusion applies to

limit or exclude coverage to the extent that the "property damage" is found to "arise out of" the failure to provide "professional services" such as the services of a civil engineer.

44. DSI reserves the right to raise other terms, limitations, endorsements, exclusions and provision of the DSI Policies that may apply.

45. DSI contends it owes no duty to defend and/or indemnify Newcor for the claims and damages alleged in the Underlying Action based on the foregoing provisions, exclusions, endorsements, terms and conditions of the 04 Policy.

46. DSI seeks a declaratory judgment, under 28 U.S.C. § 2201, that the allegations and/or claims for damages asserted in the Underlying Action are not covered, are limited, and/or excluded by the foregoing provisions, exclusions, endorsements and terms and conditions of the DSI Policies, including the 04 Policy, and not covered and/or potentially covered under the DSI Policies and therefore, DSI does not have, and never had, any duty to defend and/or indemnify Newcor.

47. DSI is entitled to an award of its attorneys' fees pursuant to A.R.S. § 12-341.01 because this matter arises out of contract.

WHEREFORE, DSI respectfully requests the following affirmative relief and declaration that:

1. The DSI Policies, including the 04 Policy, do not provide coverage or potential coverage to defend or indemnify Newcor for the allegations and/or claims arising out of the Underlying Action;

2. Coverage for the Underlying Action was never triggered because the conditions precedent to coverage were not met;

3. Coverage for the Underlying Action is excluded and/or limited by the terms, exclusions, endorsements, and provisions set forth above and any other provisions of the DSI Policies that may apply;

4. DSI is entitled to its attorneys' fees, costs and recoverable interest in this action; and

5. DSI is entitled to such other and further relief as the court may deem just and proper.

**RESPECTFULLY SUBMITTED** this 4th day of February, 2020.

          **SANDERS & PARKS, P.C.**

          By s/ Jasmina Richter
            Jasmina Richter
            3030 North Third Street, Suite 1300
            Phoenix, AZ 85012-3099
            *Attorneys for Plaintiff Newcor Homes, LLC*